IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00735-WYD-MJW

JESUS BORREGO,

Plaintiff,

v.

LIEUTENANT MATHEWS,
SARGENT ANDRADE,
CORRECTIONAL OFFICER K. PETTIT,
    To all be sued in their official and individual capacities,

Defendants.

## RECOMMENDATION ON DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT OR TO DISMISS (Docket No. 32)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter was referred to the undersigned by Chief Judge Wiley Y. Daniel by Order of Reference to Magistrate Judge issued on June 13, 2008. (Docket No. 13).

Now before the court for a report and recommendation is the Defendants' Motion for a More Definite Statement or to Dismiss (Docket No. 32), attached to which is an affidavit of Anthony DeCesaro (Docket No. 32-2). Plaintiff filed a Response (Docket Nos. 37 and 38). Defendants then filed a Reply (Docket No. 40) in which they raised new arguments for dismissal and to which they attached the affidavits of Troy Chavez (Docket No. 40-2) and Anthony DeCesaro (Docket No. 40-3). Given the additional arguments raised in that Reply, this court allowed plaintiff to file a sur-reply (Docket No. 42, Minute Order; Docket No. 46, Sur-Reply). Thereafter, the court put the parties on

notice that in view of the exhibits attached to the defendants' motion and reply, in accordance with Fed. R. Civ. P. 12(d), the defendants' motion was being converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Docket No. 47, Minute Order). The court thus gave the parties up to and including February 19, 2009, to submit any and all additional evidentiary materials made pertinent to the motion by Fed. R. Civ. P. 56. (Docket No. 47). Plaintiff then filed an additional response. (Docket No. 49). The court has considered the above-mentioned motion papers, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the followings findings, conclusions, and recommendation on the defendants' motion.

> Rule 12(b)(1):
>
> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242,

1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

**PLAINTIFF'S ALLEGATIONS**

In his Prisoner Complaint (Docket No. 2), brought pursuant to 42 U.S. C. § 1983, the pro se incarcerated plaintiff alleges the following two claims for relief.

**Claim One**

First, plaintiff alleges a violation of the Eighth and Fourteenth Amendments based on the following. On November 16, 2006, defendant Lt. Mathews passed out the pod toilet paper during which time some inmates had been yelling "shit" at him. Mathews turned back toward the pod and yelled in a hostile tone of voice, "You bitches keep talking shit behind those doors." About five minutes later, Mathews and two other officers ran back into the pod, up the stairs, and straight toward plaintiff's cell. "Mathews went '<u>crazy</u>', yelling in a very loud hostile and life threatening voice, 'You fucken bitch, punk, fucken wetback, you want to talk shit behind that door1 [sic], I'll come in there and fuck you up." (Docket No. 2 at 4). Plaintiff was put in complete fear for his life and well being by this tirade. Another inmate on the same tier yelled over the Mathews, "Hey, I'm the one who was talking shit to you, not Borrego." Mathews went to that inmate's cell and responded, "I don't give a fuck! He's going to take the heat for you. Fuck him!"     Mathews then spitefully had plaintiff's cell stripped, had plaintiff fired from his unit barber job, and had his levels and privileges taken from him for no valid reason and without a written disciplinary notice of charges.

Plaintiff filed grievances. During the time he waited for an answer, there was flooding on the tier for nine days, and Mathews and Sgt. Andrade woke plaintiff up, cuffed him, escorted him to the E-Unit barber shop, and threatened him to let the matter in his grievance drop, or they would both make it harder for him while he was at CSP.

In January 2007, plaintiff's case manager reinstated plaintiff's level 3 status and privileges because there was no documentation as to why they were sanctioned against plaintiff. According to the Department of Corrections' ("DOC") Administrative

Regulations ("ARs"), plaintiff would thus be allowed to get his job reinstated, but Mathews and Andrade continued to harass plaintiff.

On February 13, 2007, plaintiff asked correction officer Conley if he would check on plaintiff's application for his barber job, and Andrade threatened plaintiff, stating, "Fuck that job, you don't need that job, and if you say anything I'll make sure you'll be here in CSP another year and a half." (Docket No. 2 at 5). "It was finally at this time that Plaintiff had enough of their bullshit and answered Sgt. Andrade with 'Fuck you then.' So of course this was the petty ass excuse both, Lt. Mathews and Sgt. Andrade were instigating Plaintiff for and they jumped all over it writing Plaintiff up on a disciplinary bogus report so that they can get Plaintiff's level 3 and his priviledges [sic] again for Plaintiff having going over there [sic] heads with his grievances and successfully having his level 3 and priveledges [sic] reinstated . . . .'" (Docket No. 2, at 5). Plaintiff was written up for threats and verbal abuse. Plaintiff was railroaded and found guilty at the disciplinary hearing and had his level 3 and privileges taken away again.

**Claim Two**

In his second claim, plaintiff also alleges a violation of the Eighth and Fourteenth Amendments. He alleges the following in that claim. In November 2007, plaintiff attempted to send his religious necklace home to his wife in the regular inmate mail in a letter. Later than evening, officer Poscoe brought plaintiff a "shakedown list" and stated that he had taken plaintiff's necklace to the shift commander's office. On November 20, 2007, property Sgt. Hiatt sent plaintiff a shakedown list in which he stated that plaintiff had ten days to provide instructions to either donate or destroy the necklace, and he

enclosed a copy of plaintiff's property list in which he removed plaintiff's necklace off his list the same day he first received it, which purportedly violated a DOC AR. Property officer Lt. Olivett violated DOC/CSP rules and policies by not permitting plaintiff to send home his unaltered necklace that was on his property list.

While lunch trays were being handed out by Sgt. Harvick and officer Pettit, plaintiff told Havrick that he wanted to speak with Captain Williams or the shift commander. When they left the pod, Lt. Burk came onto the pod and to plaintiff's cell, and plaintiff explained the incident concerning his necklace. Lt. Burk stated that plaintiff was correct and that he would check into it for plaintiff. Plaintiff gave Burk his lunch trays still full and uneaten because plaintiff chose not to eat lunch. When Pettit returned to collect the lunch trays from the pod and did not know that plaintiff had given the tray to Burk. Pettit went and shut off plaintiff's television power, and without affording plaintiff due process, told plaintiff that his television would be off for three days and that she had taken plaintiff's level 3 and barber job. Plaintiff later asked the reason why Pettit took such actions, and Lt. Prior advised that Pettit had accused plaintiff of being mad about his necklace and had thrown his lunch trays in his cell. Prior verified with Burk that plaintiff had given Burk his lunch trays, yet the punitive sanctions were never reversed, nor was plaintiff afforded a hearing or forum to have his level 3, privileges, and barber shop job reinstated, thus violating his civil rights.

Plaintiff seeks $75,000 in punitive damages and $75,000 in compensatory damages for defendants' malicious and willful actions which violated his due process and civil rights by charging him with bogus and trumped-up charges and not allowing him his due process or a hearing to mount a defense against such charges and

sanctions, and for putting him in fear for his life on more than one occasion. He also asks that Mathews, Andrade, and Pettit lose rank and pay the above relief out of their own pockets.

**DEFENDANTS' MOTION**

### Motion for More Definite Statement

In their motion for a more definite statement (Docket No. 32), defendants assert that it is not clear from the Complaint which specific actions by the defendants form the basis for the two claims. The Complaint is allegedly "vague and confusing, making it very difficult for State Defendants to understand and respond to each allegation made against them and other DOC employees. It is difficult to identify not only the exact allegations, but also against whom they are made." (Docket No. 32 at 2). Defendants assert that "Plaintiff's Complaint does not contain 'a short and plain statement of the claim showing that [he] is entitled to relief', and nor does he make a 'demand for the relief sought', as required by Fed. R. Civ. P. 8(a). Most importantly, while the Complaint recites a litany of complaints against several DOC employees, it does not contain any demand or prayer for relief." (Docket No. 32 at 3). This court finds, however, that while the plaintiff's Prisoner Complaint is not a model pleading, it adequately states actions by the defendants that form the basis for his two claims for relief, and he specifically states a prayer for relief (see Docket No. 2 at 9). Therefore, defendants' motion for a more definite statement should be denied.

### Motion to Dismiss

In the alternative, defendants move to dismiss on the following grounds: (1)

failure to comply with Fed. R. Civ. P. 8(a); (2) lack of subject matter jurisdiction based on Eleventh Amendment immunity; (3) failure to state a claim upon which relief can be granted because (a) plaintiff's Complaint is deficient on its fact pursuant to Rule 8, (b) prisoners have no constitutional right to employment, and (c) plaintiff's claims are barred by the Prisoner Litigation Reform Act ("PLRA") because plaintiff has failed to exhaust his administrative remedies with regard to his second claim, and he did not grieve the denial of a disciplinary hearing.  In their Reply, defendants also assert that plaintiff never filed any administrative grievance alleging defendant Andrade's wrongdoing, did not administratively exhaust any Eighth Amendment or retaliation claims, and has not stated Fourteenth or Eighth Amendment claims.

<u>Failure to Comply with Rule 8(a).</u>  Defendants assert again that plaintiff's Complaint does not comply with Fed. R. Civ. P. 8(a).  As found above, this court finds that the Complaint adequately states actions by the defendants that form the basis for his two claims for relief.

<u>Eleventh Amendment Immunity.</u>  Defendants assert that the Eleventh Amendment bars plaintiff's claims, and plaintiff's action should be dismissed.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  <u>Hunt v. Bennett</u>, 17 F.3d 1263, 1267 (10th Cir. 1994).  Accordingly, plaintiff's official capacity claims for damages should be dismissed with prejudice.  Plaintiff's entire action, however, should not be dismissed on this ground as

asserted by defendants.

<u>Exhaustion of Administrative Remedies.</u>  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Pursuant to <u>Jones v. Bock</u>, 549 U.S. 199, 127 S. Ct. 910 (2007), "the failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."  <u>Jones</u>, 127 S. Ct. at 921.  Furthermore, the Tenth Circuit subsequently held that as an affirmative defense, exhaustion must be raised and proven by the defendants.  <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1241 (10th Cir. 2007).

The Colorado Department of Corrections has a Grievance Procedure available to inmates which entails first a written informal grievance and then a formal three-step written grievance procedure.  <u>See</u> Administrative Regulation No. 850-04 (Docket No. 40-2).

Here, defendants correctly assert that the plaintiff has failed to exhaust his administrative remedies with regard to his claims against defendant Pettit.  Defendants have shown that on March 24, 2008, plaintiff filed a Step 1 grievance alleging misconduct by defendant Pettit on November 21, 2007, but the grievance was denied as untimely, and plaintiff did not appeal the denial.  (Docket No. 40-3, Aff. Of Anthony DeCesaro at 2, ¶¶10).  Therefore, plaintiff has failed to exhaust his claims against Pettit, and such claims should thus be dismissed without prejudice.

Furthermore, plaintiff's claims against Andrade and retaliation claims should also

be dismissed without prejudice because plaintiff first raised them in his Step 3 grievance (Docket No. 40-3), but DOC regulations prohibit adding a substantive issue at a later stage in the grievance process that was not raised below. AR 850-04(IV)(B)(3)(b). Furthermore, plaintiff's claims regarding Mathew's actions after November 16, 2006, which are contained in Claim One, were also not raised in plaintiff's grievances. In addition, defendants correctly assert that while the plaintiff mentions in his Complaint that he was not given a disciplinary hearing before being stripped of his prison job and level privileges, he did not raise these claims within the DOC administrative grievance process. Therefore, plaintiff's due process claims should also be dismissed without prejudice.

The court notes that plaintiff asserts in his Response that federal constitutional claims for monetary damages cannot be grieved under AR 850-04, and, therefore, defendants have no exhaustion defense. (Docket No. 46 at 3, ¶ 9). It is well-established, however, that "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth, 532 U.S. at 741, n.6.

Due Process Claim. Defendants further assert that the plaintiff fails to state a Fourteenth Amendment claim. They note that plaintiff bases such claim on the fact without being afforded a hearing, he lost TV privileges for three days, was reduced from Level 3 to 2, and lost his prison barber job. Defendants further note plaintiff's claim that

"DOC policies and rules mandate that Plaintiff be served a Notice of Charges and given a Disciplinary hearing before implementation of any sanctions be [sic] imposed." (Docket No. 37 at 3). Defendants have shown, however, that contrary to plaintiff's assertion's, Colorado State Penitentiary's rules expressly authorize any staff member to reduce an inmate in the Quality of Life Level Program ("QLLP") from Level 3 to 2 for inappropriate behavior or program non-compliance (Docket No. 40-2 at 3-18; Operational Memorandum ("OM") 650-100(IV)(F)(3)(c)(1)), and there is no provision for a hearing for being regressed from Level 3 to 2. Furthermore, under that OM, QLLP inmates who demonstrate inappropriate behavior may lose television privileges for three days at a time, and those reduced to Level 2 are not eligible for prison job assignments. OM 650-100(IV)(F)(2) and (J)(2)(a). Defendants also contend that plaintiff had no protected property or liberty interest in having a prison barber job, remaining at Level 3, or having uninterrupted television privileges and thus has failed to state a Due Process claim upon which any relief can be granted.

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court "redefined the scope of prisoner due process claims and clarified the proper approach for their analysis." Klein v. Coblentz, 1997 WL 767538 (10th Cir. Nov. 19, 1997). The Court noted in Sandin that although

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [those] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.

Here, the sanctions imposed upon the plaintiff, which are set forth in Claim One, namely his loss of a prison job, his reduction from Level 3 to 2 in the QLLP, and his three-day loss of television privileges, do not "inevitably affect" the duration of plaintiff's confinement or impose an "atypical and significant hardship in relation to the ordinary incidents of prison life." Id. The court has carefully examined the differences in the conditions in confinement set forth in OM 650-100 for Levels 2 and 3 (see Docket No. 40-2 at 6-8)[1] and concludes at that there is sufficient evidence to establish that such

---

[1] According to OM 650-100, Quality Level Two is

> [t]he second level within the incentive program for offenders who have demonstrated appropriate behavior at Quality Level One. Offenders at this level are eligible to participate in recommended programs. Offenders will be evaluated for documented appropriate behavior and program compliance. Maintain Quality of Life Level Two for three (3) consecutive months. Offenders assigned to this level will have increased privileges but will not have the opportunity for job assignments.
>
> a.   PRIVILEGES:
>
>   1)   Purchase canteen items totaling $15.00 per week.
>   2)   Two 2-hour non-contact visits per month.
>   3)   Two 20-minute telephone calls per month.
>   4)   One 12" or 13" television set for program delivery and recreational interest.

(Docket No. 40-2 at 6). Furthermore Quality Level Three is

> for offenders who have demonstrated appropriate behavioral and program compliance, demonstrated proper interaction with staff and other offenders, maintained suitable cell conditions. Offenders at this level will have the opportunity for a job assignment and have increased privileges.
>
> a.   PRIVILEGES
>
>   1)   Purchase canteen items totaling $20.00 per week.
>   2)   Four 3-hour non-contact visits per month.
>   3)   Four 20-minute telephone calls per month.

conditions do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Furthermore, the court notes that plaintiff's privilege reduction was not for a very extended period of time (from November 16, 2006, to some unspecified time in January 2007). In addition, with respect to plaintiff's loss of his barber job, the U.S. "Constitution does not create a property or liberty interest in prison employment," nor do the laws of the State of Colorado. Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986); Grady v. Edmonds, 2007 WL 2986167, *8 (D. Colo. June 11, 2007).

Therefore, this court recommends that summary judgment be granted to defendant Mathews on the plaintiff's due process claims in Claim One.

Eighth Amendment Claim. Defendants assert that although plaintiff mentions the Eighth Amendment as a basis for each of his claims, he does not say what conditions or conduct by the State Defendants constitute cruel or unusual punishment. They thus assert that "[t]his is insufficient to state an Eighth Amendment claim." (Docket No. 40 at 9). Reading plaintiff's Complaint liberally, it appears that in the only claim exhausted, namely, his claim against defendant Mathews based on the incident on November 16, 2007, plaintiff may be raising an Eighth Amendment claim when he avers that he was put in complete fear for his life and well being by Mathew's "tirade." Such mere verbal threats and harassment, however, without more, do not state a claim of constitutional

---

    4)    One 12" or 13" television set for program delivery and recreational interest.
    5)    Opportunity for day hall porter or barber jobs.

(Docket No. 40-2 at 7).

dimension. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [i.e., sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondent] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry" are "verbal threats and harassment"); Teague v. Hood, 2008 WL 2228905, at *13 (D. Colo. May 27, 2008) ("verbal harassment, threats, or taunts do not rise to the level of . . . an Eighth Amendment violation") (and cases cited therein).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion for a More Definite Statement (Docket No. 32) be denied and that Defendants' Motion to Dismiss (Docket No. 32), which upon notice has been converted to a motion for summary judgment, be granted.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

| | | |
|---|---|---|
| Date: | February 27, 2009<br>Denver, Colorado | <u>s/ Michael J. Watanabe</u><br>Michael J. Watanabe<br>United States Magistrate Judge |